

FILED & JUDGMENT ENTERED
David E. Weich

Mar 09 2007

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

```
In re:                              )
                                    )
EASTERN SEABOARD PACKAGING, INC.,   )   Case No. 06-30069
                                    )   Chapter 11
            Debtor.                 )
_____)
                                    )
AMERICAN INDUSTRIAL PACKAGING       )   Adv.No. 06-3249
CORPORATION, d/b/a AMERIPAK         )
                                    )
            Plaintiff,              )
vs.                                 )
                                    )
EASTERN SEABOARD PACKAGING,         )
INC. and THE FINLEY GROUP, INC.,    )
                                    )
            Defendants.             )
_____)
```

**ORDER: (1) GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING PARKER POE ADAMS & BERNSTEIN LLP TO REPRESENT THE DEBTOR AND THE FINLEY GROUP, INC. IN ADV. PROC. NO. 06-03249**

**&**

**(2) GRANTING IN PART, DENYING IN PART DEFENDANTS' JOINT MOTION TO DISMISS**

THIS MATTER is before the Court on two motions: (1) Debtor's base case Motion for Order Authorizing Parker Poe Adams

& Bernstein LLP ("Parker Poe") to Represent the Debtor and The Finley Group, Inc. in Adv. Proc. No. 06-03249, and (2) Defendants' Joint Motion to Dismiss, filed in the adversary proceeding. American Industrial Packaging Corporation ("Ameripak") has objected to each. After a joint hearing, a bench ruling was announced on February 2, 2007.

**HELD:**  (1) Defendants' Joint Motion to Dismiss is **DENIED**, with one minor exception.  Count Nine, the Negligent Misrepresentation claim, is **DISMISSED** to the extent it seeks recovery against TFG in its individual, as opposed to its official, capacity.

(2) Debtor's joint representation motion is **GRANTED**, with the admonition that counsel monitor the relative positions of its two clients. Should conflicts arise, the matter should be brought back before the Court and further instructions sought.

**STATEMENT OF FACTS**

Eastern Seaboard Packaging, Inc. ("ESP"), the Chapter 11 debtor-in-possession ("DIP"), was once a distributor of cardboard packaging products. ESP operated out of eleven different locations across the eastern United States. In 2005, ESP lost a key customer and fell on hard times. A reorganization was attempted using a turnaround firm, The Finley Group ("TFG").

The attempt failed, and by year's end ESP had begun to liquidate its business.

In January 2006 creditors filed an involuntary bankruptcy petition against ESP. Eventually, an agreement was reached by which ESP entered Chapter 11; management resigned; and TFG was retained as the DIP's Chief Restructuring Officer ("CRO") and charged with completing the liquidation. To this end, TFG closed sites, sold assets, and moved the remaining inventory and fixed assets to a leased warehouse in New Jersey.

Ameripak is also a distributor of packaging products and was interested in purchasing the DIP's assets. In March 2006, Ameripak went to ESP's New Jersey warehouse. Because the onsite assets had been packed into the space, Ameripak was unable to do either a thorough inspection or inventory. Nevertheless, it agreed to buy many (if not all) of these assets.[1] The two sides entered into a sales agreement that was approved by the Court in mid May. Unfortunately, a dispute arose over terms such that the agreement was set aside.

Undeterred, the parties quickly struck a second deal, which sale was approved on May 26, 2006. This agreement was negotiated under intense time pressure because the Debtor was obliged to surrender the New Jersey premises to its landlord before June 1.

---

[1] As now, after the first sale, the two sides disagreed as to what assets were being sold.

After closing, Ameripak inventoried the New Jersey assets and found them wanting. It filed this adversary proceeding seeking to recover for allegedly missing and/or damaged goods. Its complaint asserts contract claims against ESP, and tort claims against ESP and TFG.

_____

By the first motion, ESP proposes to use its counsel, Parker Poe, to provide a joint defense of this action. Ameripak objects, arguing that (1) the motion does not meet the requirements of FRBP 2014; and (2) the arrangement amounts to an improper indemnification of TFG.

In the second motion, Defendants seek dismissal of specified counts of the adversary proceeding, arguing: (1) TFG, as an officer of the estate, is immune from suit; (2) the tort claims pled in the Complaint are neither identifiable nor distinct from the contract claims, as required by North Carolina law; and (3) the pled tort claims lack the specificity required by Rule 9(b).

The parties have filed briefs detailing the legal arguments and authorities.

**DISCUSSION**

I. **Joint Representation Motion**

The Court is inclined to grant the joint representation motion, for two reasons. First, there is no creditor opposition

to this motion. The only entity opposed is Ameripak, a disgruntled asset purchaser. Ameripak lacks legal standing to object to this motion.

Under Article III legal standing is premised upon having "'...such a personal stake in the outcome of the controversy' as to... justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354 (1975), *quoting Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

In effect, the joint representation proposal is nothing more than a Code § 327 retention of professionals motion.[2] Ameripak implicitely admits as much, given that it is objecting under FRBP 2014, a bankruptcy rule specifying the disclosures required by professionals to be retained by the estate.

Congress has expressly limited standing to object to § 327 retention motions, by providing that these can be filed only by "another creditor or the United States Trustee."[3] 11 U.S.C. § 327(c).

Ameripak is not presently a creditor. If its action succeeds, it may become one, but the expectancy is insufficient to create standing. *See Wiseman v. Pittsburgh Nat. Bank*, 942 F.2d 867, 871 (4th Cir. 1991). For now Ameripak is simply a

---

[2] FRBP 2014 implements Bankruptcy Code §§ 327, 1103 and 1114, regarding the appointment of professionals.

[3] In North Carolina and Alabama, the Bankruptcy Administrator.

5

litigation opponent of the estate. Such a party lacks standing to object to the trustee's choice of counsel. *See In re Pappas,* 216 B.R. 87 (Bankr. D. Conn. 1997).

A second reason to approve this motion is that it is in the best interests of this bankruptcy estate. At this time, defendants' positions are congruent, not adverse. Furthermore, on these facts, a joint defense is likely to avoid duplication of legal services, thereby preserving the limited monies of this bankruptcy estate.

Ameripak contends it was "snookered" by ESP/TFG who contracted to sell it assets that they knew were either damaged or nonexistent. The theory continues that under the circumstances (a packed warehouse and an urgent need to get out of the site), Defendants also knew Ameripak would be unable to discover their ruse.

If Ameripak is correct, ESP acted improperly. However, it did so at the behest of TFG, its de facto management. Consequently, it accomplishes nothing to require TFG to hire separate counsel. One law firm or two, TFG will be directing the defense. The only alternative would be to replace TFG with a trustee—a disruptive act whose cost will be borne by creditors, not Ameripak. The Court is not inclined to make such a drastic change based upon unproven allegations.[4]

---

[4] Should it later be determined that TFG has breached its fiduciary responsibilities to the estate, then a trustee can be appointed to assert

## II. Motion to Dismiss

### A. Immunity.

As to the adversary motion, Defendants advance several arguments in favor of dismissal. First, they say TFG is immune from suit. Their premise is that TFG is occupying a position analogous to that of a bankruptcy trustee. Since a bankruptcy trustee acting within the scope of his authority or under express orders of the court is not individually liable to third parties See *Yadkin Valley Bank v. McGee*, 819 F2.d 74, 75-6 (4th Cir. 1987)("YVB I"); *Yadkin Valley Bank v. McGee*, 5 F.3d 750, 753 (4th Cir. 1993) ("YVB II"); *United States v. Sapp*, 641 F.2d 182, 184 (4th Cir. 1981), they posit, neither is TFG.

Ameripak acknowledges that the bankruptcy trustee enjoys a qualified immunity from suit, but points out that TFG is not a bankruptcy trustee. It contends TFG is simply a firm hired by the bankruptcy estate to perform a particular task, similar to realtors and appraisers. Ameripak's brief cites several cases holding that such third parties are not immune from suit.

There are a couple of problems with Ameripak's theory. The first one is that the cases cited in its brief are not from this Circuit. In the Fourth Circuit, the bankruptcy trustee's qualified immunity has been extended to trustee's counsel and to other case officers who perform the functions of a trustee. *See*

---

that claim. For now, the record does not establish that TFG has acted improperly.

7

*Gordon v. Nick*, 162 F.3d 1155 (4th Cir. 1998); *Allard v. Weitzman*, 991 F.2d 1236, 1240-41 (6th Cir. 1993).[5] TFG would appear to be such a party.

Additionally, Ameripak's comparison of TFG to appraisers and realtors assumes three facts not present here: (1) a reorganizing company run by internal management; (2) an outside firm performing limited tasks; and (3) supervision of that firm by management.

Our case does not involve the reorganization of an operating entity, but the liquidation of a dead one. The liquidation is not directed by company officers, but by TFG acting in lieu of those officers. Finally, TFG is not performing limited tasks under company supervision, but is directing all aspects of the liquidation. In short, TFG is functioning like a trustee. As such, it enjoys trustee immunity.

Ameripak presses on, arguing that even the bankruptcy trustee can be sued under 28 U.S.C. § 959. True enough. Section 959 permits third party suits against trustees managing property for a court, provided the trustee is "carrying on business connected with such property." 28 U.S.C. § 959.

---

[5] Although these two cases slightly involved suits filed against bankruptcy trustees in other courts. However, the logic of these decisions applies equally to suits filed in bankruptcy court. If the trustee is immune from suit, then so are those professionals acting as his functional equivalent.

However, the case law uniformly holds that a trustee who is simply gathering and liquidating a debtor's assets does not fall within the purview of the statute:

> "Merely collecting, taking steps to preserve, and/or holding assets, as well as other aspects of administering and liquidating the estate, do not constitute 'carrying on business' as that term has been judicially interpreted."

*In re Campbell*, 13 B.R. 974, 976 (Bankr. Idaho 1981)(emphasis added); *Accord Beck v. Fort James Corp.* (*In re Crown Vantage, Inc.*) 421 F.3d 963,971-2 (9th Cir. 2005).

Clearly, TFG was not carrying on ESP's business of quick-shipping boxes and other packing supplies to customers. It was instead conducting a forced liquidation sale of ESP's remaining assets to a competitor.

The assets in question were not being marketed in the ordinary course of business. Most were not even at their usual locations, having been moved into the New Jersey warehouse after those sites closed.

They were not stored in a normal business fashion. Rather, they were packed into a warehouse so compactly that they could not be inventoried--the ultimate reason why we are here today.

The sale terms were not ordinary, but were "as-is, where is."

Finally, the sale was negotiated and closed in a rush as the debtor sought to vacate the premises.

Since this sale was in keeping with TFG's role as the case liquidator and was also approved by the Court, it would appear the action cannot be maintained against TFG. However, one unsettled point requires that TFG remain a defendant, at least for now.

Ameripak's willful misrepresentation claim and its conversion claims are both intentional torts. Notwithstanding qualified immunity, a trustee is liable for intentional torts, personally committed. Such claims can either be said to be acts outside the scope of the trustee's official authority or wrongful acts personally committed by the trustee. *See Ralph C. McCullough, Trustee Liability: Is There Enough Protection For These "Arms Of The Court?",* 103 Com. L.J. 123 (Summer 1998); E. Allen Tiller, *Personal Liability of Trustees and Receivers in Bankruptcy*, 53 Am. Bankr. L.J. 75 (1979). Either way, there is no immunity.

Because this matter is presented in a motion to dismiss, the facts of the complaint must be assumed to be true. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). As such, the intentional tort claims asserted against TFG in Counts Four through Eight are not subject to dismissal.

However, TFG gains a small victory. Count Nine, the negligent misrepresentation claim, was pled against TFG in an individual, and not an official, capacity. In this Circuit, a

bankruptcy trustee cannot be sued personally for negligent acts taken within the discretionary bounds of this authority. *U.S. v. Sapp*, 641 F.2d 182 (4th Cir. 1981); *citing Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir. 1977).

Since the asset sale fell under TFG's authority as the Debtor's CRO, and was approved by this Court, TFG has no potential personal liability to Ameripak for negligence. Count Nine is therefore dismissed to the extent it asserts individual liability against TFG, but retained as a claim against TFG in its official capacity.

### B. Torts and Contracts.

As their second argument, Defendants contend Ameripak's tort claims must be dismissed outright because they are grafted onto what is really only a breach of contract suit. North Carolina law permits such overlays only where the tort claims are both "identifiable and distinct" from the primary breach of contract claims. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 255 F3d. 331, 346 (4th Cir. 1998).

*Meineke* is a well-known case from this judicial district. A group of franchisees sued their franchisor for misuse of advertising funds said to be in breach of the parties' franchise agreement. On the same facts, the franchisees sued Meineke for breach of fiduciary duty, fraud, unjust enrichment, negligence, and negligent misrepresentation.

11

The U.S. District Court entered a $390 million trial judgment in favor of the franchisees, which judgment included tort relief. On appeal, the Fourth Circuit reversed, holding that these tort claims were neither identifiable nor distinct from the primary breach of contract claims. *Id.* at 346.

Ameripak distinguishes *Meineke*, arguing that the pled facts of our case are much more sinister. This Court agrees. Our complaint describes both a breach of the purchase contract by ESP and a scheme to induce Ameripak to enter into that contract. These allegations may or may not be proven. However, they go far beyond breach of contract. If true, they support a claim of intentional misrepresentation, fraudulent inducement to enter into a contract, and conversion.

Given these allegations, the current dispute is less akin to *Meineke* than it is to another Western District case following *Meineke*.

In *Capital Factors, Inc. v. The Fryday Club, Inc*. 209 F. Supp. 2d 583, 585-86 (W.D.N.C. 2002), a borrower sued its factor for failure to properly maintain its account. Its Complaint included a claim of breach of contract and several counts sounding in tort, including misrepresentation and breach of fiduciary duty. The Defendant moved to dismiss the tort claims, citing *Meineke*. Its motion was denied.

Judge Mullen's opinion compares the factual allegations in *Capitol Factors* to those in *Meineke* and finds them more serious. The complaint did not simply assert Capital had breached a contract. It alleged Capital had deliberately misappropriated funds, failed to credit client accounts, and failed to provide it with needed information.

Such acts, the District Court held, "obviously do not fall within the scope of the Agreement, or the realm of contract law, and that because of the alleged malice or recklessness allow the litigants to foray into tort law. The actions are comprised of substantially separate, distinct, and therefore identifiable independent facts that differ from the facts that the contract dispute is founded on." *Id.* at 585.

> Consequently, the tort counts could be maintained:
>
> While it is sound policy that contracts be upheld to allow parties to limit terms and damages, …it is equally sound policy to assure that parties do not sacrifice other extra-contractual rights just because they have a contract.

Id. at 585-86.

Like *Capital Factors*, our case presents a breach of contract suit that also features misrepresentations going beyond the breach and into the inducement to enter into the agreement. Capital Factors instructs that if ESP/TFG misled Ameripak into entering into the purchase contract, the fact that there was a written agreement would not waive these additional claims.

13

**C. Rule 9(b) Particularity.**

Finally, Defendants argue the complaint does not plead fraud and misrepresentation with the specificity required by FRCP 9(b), made applicable to bankruptcy cases under FRBP 7009. They argue Counts Four through Eight should be dismissed.

Rule 9(b) demands that "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

The undersigned has thoroughly reviewed this complaint, and finds it sufficiently detailed. As Ameripak argues in its brief, this Complaint meets the pleading requirements of time, place, contents, and identify. See *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999).

If this Complaint is not perfect, the fault comes in large part from two unavoidable pleading problems: (1) how to plead temporal details of misrepresentation was based upon a failure to speak; and (2) how to plead identity of the actor, given that TFG was acting for both itself and as the de facto management of ESP.

There is one small detail that bears noting. Ameripak has not specifically pled the basis of Defendants' alleged duty to speak. However, at hearing the parties recognized that this

duty, if there is one, would arise from Defendants' supposed superior knowledge of the assets and Ameripak's inability to discover the true facts prior to closing. This oversight is minor, such that Ameripak need not amend the Complaint to expressly state the basis of the duty. We will simply presume it going forward.

**IT IS THEREFORE ORDERED:**

1. Debtor's Motion For Order Authorizing Parker Poe Adams & Bernstein LLP To Represent The Debtor And The Finley Group, Inc. in Adv. Proc. No. 06-03249 is **GRANTED.**

2. Defendants Joint Motion to Dismiss the Adversary Proceeding is **GRANTED** as to the personal liability assertion against TFG found in Count Nine, but is otherwise **DENIED.**

**This Order has been signed          United States Bankruptcy Court
electronically.  The judge's
signature and court's seal
appear at the top of the Order.**